THE PEOPLE *ex rel.* John Koelling, Appellee, *vs.* JOHN C. CANNON *et al.* Appellants.

*Opinion filed October 26, 1908.*

1. APPEALS AND ERRORS—*what is necessary to authorize the Supreme Court to entertain direct appeal.* To authorize the Supreme Court to take jurisdiction of an appeal direct from the circuit court, it must appear from the record, and not merely from statements of counsel in their briefs and argument, that some question is involved which authorizes the appeal.

2. SAME—*question of proper construction of a statute does not justify direct appeal.* The questions whether a certain statute applies to a proceeding to require election commissioners to submit a question to the voters at an election, or whether the question to be submitted is a matter of public policy within the meaning of the Public Policy act of 1901, involve merely the construction of such statutes and not their validity, and do not authorize a direct appeal to the Supreme Court from the circuit court.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

On the 7th day of February, 1908, a petition was presented to and filed with the board of election commissioners of the city of Chicago asking for submission to the voters of said city, at the election to be held April 8 following, to be voted on by separate ballot, the question, "Shall all places where liquor is sold or given away in this city on Sunday be closed upon that day?" The petition was signed by more than twenty-five per cent of the registered voters of the city of Chicago, and the right to have the question mentioned in the petition submitted to a vote, the petitioners claimed, was to be found in what is known as the "Public Policy act" of 1901. (Hurd's Stat. 1905, p. 967.) Objections to the submission of the question were filed with the board of election commissioners. One of the objections was, that the question proposed to be submitted was not one of public policy in contemplation of law. This objection was sus-

tained and the prayer of the petition denied by the board. Thereupon the petitioners, or some of them, filed in the circuit court of Cook county a petition for a writ of *mandamus* commanding the board of election commissioners and its clerks to submit the question, to be voted on by separate ballot, at the April election. The defendants to the petition filed a demurrer, which was overruled and judgment entered awarding the peremptory writ of *mandamus*. From that judgment the election commissioners have prosecuted an appeal direct to this court.

WALTER L. FISHER, and FRANK D. AYERS, for appellants.

LEVY MAYER, and HARRY RUBENS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The first question that confronts us is, has this court jurisdiction to entertain the appeal? Appellants contend that the elective franchise is involved; also that the validity of the Public Policy act, and section 10 of the Australian Ballot law, (Hurd's Stat. 1905, p. 929,) and the provision of the Dram-shop act requiring dram-shops to be closed on Sunday, are involved.

Section 10 of the Australian Ballot law provides that objections to the nomination papers of candidates for office shall be considered and determined by certain public officials named. In case the nomination papers of a candidate for a State office are objected to, the objection must be considered by the Secretary of State, Auditor and Attorney General; if the nomination papers of a candidate to be voted for by the voters of a division less than a State and greater than a county are objected to, the objection must be considered by the county judges of the counties embraced in such division; and if the objection is to the nomination papers of a candidate for a county office, the objection must

be considered by the county judge, county clerk and State's attorney. In either case the decision of a majority of such officers is made final. A proviso to said section 10 reads: "*Provided,* that in cities, towns or villages having a board of election commissioners such questions shall be considered by such board and its decision shall be final." The only basis for claiming that the constitutionality or validity of this section of the statute is involved is, that it is stated by appellants in their brief and argument that they insisted in the trial court that said section 10 was applicable to the case and made the decision of the election commissioners final, and that petitioners insisted there, as here, that said section was not applicable, and further insisted in the trial court that if the court held said section applicable they would insist that it was unconstitutional. It does not appear from this record that the court agreed with appellants' contention as to the applicability of section 10, but, on the contrary, we understand from appellants' brief and argument that the circuit court held said section not applicable. The applicability of the statute, and not its validity, was the only question involved in the decision of the case.

We find no basis in this record for the assumption that the elective franchise or the validity of any other statute or any question of constitutional construction is involved in the determination of the case. In no view that we can take of the case is any question involved that authorized the appeal direct to this court from the circuit court. The sole question involved is the construction of the Public Policy act of 1901. Section 1 of that act provides: "That on a written petition signed by twenty-five per cent of the registered voters of any incorporated town, village, city, township, county or school district, * * * it shall be the duty of the proper election officers in each case to submit any question of public policy so petitioned for, to the electors of the incorporated town, village, city, township, county, school district or State, * * * at any general or special election

named in the petition.". Section 2 provides that the question submitted shall be printed upon a separate ballot, in the form required by law, the same as a constitutional amendment or other public measure proposed to be voted upon by the people. The validity of this act was not challenged by any of the objections filed before the board of election commissioners and was not involved in the determination of the case in the circuit court. The sole question, as we understand this record, was whether the proposition proposed by the petition to be submitted to the voters was a question of public policy within the meaning of the statute. The election commissioners, as appears from a written opinion filed by them, which is made a part of the petition, held that it was not; that the question proposed to be submitted, to come within the meaning of the law, must be for the purpose of obtaining an expression of the public sentiment upon the enactment of a new law by the proper authorities or the repeal or amendment of a law already upon the statute books. If the question presented by the petition was one of public policy within the meaning of the statute, the election commissioners had no discretion in the matter and it became their duty to submit it to be voted upon at the election; if the question, however, was not one of public policy within the meaning of the law, then it was their duty to refuse to submit the question. The point of difference between the election commissioners and the circuit court was, that as the former construed the statute the question proposed was not one of public policy, while as the circuit court construed the statute the question was one of public policy. In both cases the question depended upon the construction given the statute.

In order to authorize this court to take jurisdiction of an appeal direct from the circuit court, it must appear from the record, and not merely from the statement of counsel in their briefs and argument, that some question was involved which authorized the appeal. (*Cleveland, Cincinnati, Chi-*

*cago and St. Louis Railway Co.* v. *McGrath,* 195 Ill. 104; *Foote* v. *Lake County,* 198 id. 638; *St. Louis Transfer Co.* v. *Canty,* 103 id. 423; *City of Virden* v. *Allan,* 107 id. 505.) No such question appears from this record to be involved in this case, and the appeal should have been prosecuted to the Appellate Court. The record will therefore be transferred to the Appellate Court for the First District.

*Appeal transferred.*