Harlen AINSCOUGH; Michael Coulter; Barbara Johnson; Ron Parker; Robert Becker; Lorraine Surprenant; Colorado Federation of Public Employees; Colorado Association of Public Employees; and American Federation of State, County, and Municipal Employees, Colorado Council 76, Plaintiffs–Appellants,

v.

Bill OWENS, Governor, State of Colorado; and Troy Eid, Acting Executive Director of the Colorado Department of Personnel and General Support Services, Defendants–Appellees.

No. 02CA0436.

Colorado Court of Appeals, Div. I.

Jan. 30, 2003.

Certiorari Granted Sept. 22, 2003.

Brauer, Buescher, Goldhammer, Kelman & Eckert, P.C., Thomas B. Buescher, Joseph M. Goldhammer, Denver, Colorado, for Plaintiffs–Appellants.

Hogan & Hartson, L.L.P., Ty Cobb, Peter Hauck Walsh, Denver, Colorado, for Defendant–Appellee Governor Bill Owens.

Law Office of Michael E. McLachlan, Michael E. McLachlan, Durango, Colorado; LeBoeuf, Lamb, Greene & MacRae, Robert Miller, Stephanie E. Dunn, Michael D. Smith, Denver, Colorado, for Defendant–Appellee Troy Eid.

Opinion by Judge PIERCE.[*]

In this case challenging the constitutionality of an executive order and payroll deduction policy, plaintiffs, Harlen Ainscough, Michael Coulter, Barbara Johnson, Ron Parker, Robert Becker, Lorraine Surprenant, Colorado Federation of Public Employees, Colorado Association of Public Employees, and American Federation of State, County, and Municipal Employees, Colorado Council 76, appeal a trial court judgment dismissing their complaint against defendants, Governor Bill Owens and Troy Eid, Acting Executive Director of the Department of Personnel and General Support Services (GSS). We affirm.

As applied to plaintiffs, the executive order suggested and the payroll deduction policy required that state employers discontinue the practice of automatically deducting, upon request, union dues from union members' paychecks and forwarding the dues directly to the unions.

Specifically, Executive Order D00701 of May 25, 2001, expressed the governor's desire that GSS discontinue automatically taking payroll deductions of any kind from employee paychecks unless the deductions were expressly authorized by statute, such as federal tax withholding, or were state-sponsored deductions available to all state employees, such as contributions to the Colorado Combined Campaign.

The order stated that "[a]s a policy, state government should not use taxpayer resources to duplicate services that can be provided by the private sector," and that state-implemented payroll deductions should be used for the convenience of the state in carrying out "employment related services to its employees." In addition, it stated that employees who wish to make deductions for "personal reasons" are able as effectively and with greater privacy protections "to arrange for personal deductions through their private financial institutions."

The order stated that it was based on the 1996 reforms to what is now § 24–50–104(8)(c)–(d), C.R.S.2002. The reforms gave the executive director discretion to approve payroll deductions, stating "the executive director shall regulate, approve, and review all payroll deductions for all state employees" other than those deductions expressly authorized by statute or those state-sponsored for all state employees. Colo. Sess. Laws 1996, ch. 273, § 24–50.3–104(8)(b) at 1507.

The 1996 reforms and the governor's executive order had no immediate practical effect on payroll deductions. Union dues were still automatically deducted from union members' paychecks via state-implemented deductions.

However, shortly after the executive order, the executive director established the payroll deduction policy in question, which ended all but certain approved state-implemented payroll deductions. On August 27, 2001, the payroll deduction policy was announced to "provide interpretive guidance to state agencies and institutions of higher education regarding permissible payroll deductions for all state employees." The policy referred to § 24–50–104(8)(c) as its source.

The policy stated, in part, that "[t]he State Personnel Director is charged by statute with administering payroll deductions" and that "[t]he state payroll system exists primarily for the State's administrative convenience."

The policy prohibited state agencies and institutions of higher education from permitting or processing payroll deductions except for the following:

1) [deductions] required by federal law or statute (e.g. tax withholdings, garnishments, court ordered child support);

2) [deductions] authorized by federal or state statute (e.g. employee benefits, "eco passes," tax treatment elections);

§ 24–51–1105, C.R.S.2002.

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

3) [deductions] expressly authorized for state sponsorship by executive order of the governor and available to all state employees (e.g. Colorado Combined Campaign); or

4) [deductions] ... for the purpose of facilitating the reimbursement of monies owed to the state from an employee (e.g. higher education tuition, uniforms, salary overpayments).

Plaintiffs filed a complaint against defendants challenging the constitutionality of the executive order and the payroll deduction policy. Defendants removed the case to federal court based on plaintiffs' alleged claims under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs subsequently dismissed their claims in federal court and refiled the state case at issue here. The trial court granted defendants' motions to dismiss, but did not specify the grounds.

## I.

■ Plaintiffs assert that the executive director's payroll deduction policy is unconstitutional as a violation of the right to free speech, is void as contrary to the policy set forth in § 24–50–104(8)(c)–(d), and is a violation of the state administrative procedure act. They also assert that the actual denial of their requests for state-implemented payroll deductions violates § 24–50–104(8)(c)–(d). Because we conclude plaintiffs lack standing, we will not consider the merits of their assertions.

■ We review de novo a trial court's grant of a motion to dismiss. *Connecticut General Life Insurance Co. v. A.A.A. Waterproofing, Inc.*, 911 P.2d 684 (Colo.App.1995), *aff'd sub nom. Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo.1996).

■ To have standing, a plaintiff must have been injured in fact, and the injury must be to a legally protected right. *Romer v. Colorado General Assembly*, 810 P.2d 215 (Colo.1991); *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977).

■ Injury in fact may be proved by showing that "the action complained of has caused or has threatened to cause injury," and, because judicial power may be exercised only when a true controversy exists, injury in fact is a constitutional prerequisite to a case being heard. *Romer v. Colorado General Assembly, supra*, 810 P.2d at 218 (quoting *Colorado General Assembly v. Lamm*, 700 P.2d 508, 516 (Colo.1985)).

■ The injury must be to a legally protected right to satisfy "prudential considerations of judicial self restraint." *Romer v. Colorado General Assembly, supra*, 810 P.2d at 218 (quoting *Colorado General Assembly v. Lamm*, 704 P.2d 1371, 1377 (Colo.1985)).

Here, plaintiffs' alleged injury is the loss of state-implemented automatic payroll deductions. Without deciding whether this loss is an injury in fact, we conclude that it is not an injury to a legally protected right.

A survey of the Colorado Constitution and the Colorado Revised Statutes reveals no legally protected right to state-implemented payroll deductions, except for those deductions "expressly authorized by statute or state-sponsored for all state employees." Section 24–50–104(8)(c). No statute now expressly authorizes the deduction of labor union dues from employee paychecks, and the payment of union dues cannot be characterized as a state-sponsored deduction for all state employees. Therefore, plaintiffs have failed to show that they have standing. *See Brotman v. East Lake Creek Ranch, L.L.P.*, 31 P.3d 886 (Colo.2001).

## II.

■ Similarly we conclude the claims asserted against the Governor were also properly dismissed for lack of standing. His order showed only a policy preference, did not assert a legal compulsion, and cannot be classified as legislative in nature. *See Travelers' Insurance Co. v. Industrial Commission*, 71 Colo. 495, 208 P. 465 (1922). It only declared his desire that § 24–50–104(8)(c)–(d) be implemented. No direct injury could have resulted from it. Therefore plaintiffs have no standing to contest it.

Accordingly, the trial court properly granted the motions to dismiss.

The judgment is affirmed.

Judge VOGT and Judge GRAHAM concur.